UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYE SU MON,<br><br>     Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES,<br><br>     Defendant. | Case No. 2:25-cv-12368-SB-SK<br><br><br>ORDER GRANTING MOTION<br>FOR DEFAULT JUDGMENT<br>[DKT. NO. 15] |

Plaintiff Aye Su Mon, a citizen of Burma and lawful permanent resident applicant, filed this immigration mandamus action to compel Defendant U.S Citizenship and Immigration Services (USCIS) to renew her employment authorization document (EAD). After Defendant failed to appear or respond to the order to show cause why default should not be entered, the Court entered default against it. Dkt. Nos. 12, 14. Plaintiff now moves for default judgment. The Court held a hearing on May 1, 2026. The government did not appear, and Plaintiff confirmed she properly served USCIS. The motion is granted.

I.

In December 2024, Plaintiff married a lawful permanent resident (LPR). On June 27, 2025, Plaintiff filed a Form I-485, Application to Register Permanent Residence or Adjust Status based on her marriage. Dkt. No. 15-8 (Form I-485 notice of receipt). In connection with her LPR application, she filed a Form I-765, Application for Employment Authorization pursuant to 8 C.F.R. § 274a.12(c)(9). USCIS confirmed receipt of that application. Dkt. No. 15-9 (Form I-765 notice of receipt). The application has been pending for over 300 days.

Plaintiff, a recent graduate of California State University, Los Angeles, is currently employed as a tax associate in Los Angeles with work authorization under 8 C.F.R. § 274a.12(c)(3)(i)(B), which applies to nonimmigrant students

1

"seeking authorization to engage in up to 12 months of post-completion Optional Practical Training[.]" *Id.*; Dkt. No. 15-5 ¶ 7. Her current EAD expires on May 27, 2026. Dkt. No. 15-10.

In December 2025, USCIS issued a policy memorandum directing agency personnel to "place a hold on pending benefit requests for aliens from countries" listed in a June 4, 2025 presidential proclamation banning citizens of multiple countries, including Burma, from entering the United States. Dkt. No. 1 ¶¶ 8–9; *see* Dkt. No. 15-4 (USCIS policy memorandum). The policy memorandum states that the hold on processing benefit requests is necessary to "ensur[e] that all aliens from high-risk countries of concern that entered the United States do not present threats to national security or public safety." Dkt. No. 15-4 at 17.

On December 30, 2025, Plaintiff filed her complaint asserting causes of action for mandamus and violation of the Administrative Procedure Act (APA). She seeks an order requiring USCIS to adjudicate her Form I-765 by May 27, 2026.[1] "Because relief under the Mandamus Act and the APA is 'in essence the same,' the Court will analyze Plaintiff's entitlement to relief under the APA only." *Kalantari v. Rubio*, No. 2:25-CV-01341-SB-RAO, 2025 WL 2427975, at *1 (C.D. Cal. June 30, 2025) (quoting *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)).

II.

The motion satisfies the jurisdictional and procedural requirements for default judgment. There is subject matter jurisdiction over a claim for unreasonable delay. *See* 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"). The procedural requirements are likewise met. *See* C.D. Cal. L.R. 55-1; *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Specifically, the application must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and, if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required). *PepsiCo*, 238 F. Supp. 2d at 1174.

---

[1] Although the complaint also seeks declaratory relief and attorney's fees, Plaintiff does not seek that relief in her default judgment motion.

2

Plaintiff served USCIS by sending the summons and complaint by certified mail to the civil process clerk at the United States Attorney's Office, the Attorney General, and USCIS. Dkt. No. 9; *see* Fed. R. Civ. P. 4(i). The Court entered default after USCIS failed to respond to the complaint. Dkt. No. 24. Plaintiff's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure, and USCIS is not a minor, incompetent person, or subject to the Servicemembers Civil Relief Act. Dkt. No. 15-1 at 3; Dkt. No. 15-2 ¶¶ 2–4. Plaintiff also served the motion and supporting evidence on USCIS. *See* Dkt. No. 15-2 ¶ 7.

## III.

While the court ordinarily accepts as admitted all factual allegations other than those relating to the amount of damages on default, *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977), there is a higher bar for entering default judgment against the government, *Giampaoli v. Califano*, 628 F.2d 1190, 1193 (9th Cir. 1980). Under Rule 55(d), "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d); *see also Borzeka v. Heckler*, 739 F.2d 444, 446 (9th Cir. 1984) (court must "consider whether [plaintiff] had submitted satisfactory evidence in support of [her] claim"). "This deference arose from recognition that the government was sometimes slow to respond to a complaint and that the public fisc should be protected against payment of unfounded claims solely because of a failure to respond timely." *Giampaoli*, 628 F.2d at 1193–94.

In light of the heightened protections against default, the Court attempted to prompt the government to respond by ordering USCIS to show cause why default should not be entered. Dkt. Nos. 12, 14. The government failed to respond and continues to ignore this lawsuit. In entering default, the Court also cautioned Plaintiff that any motion for default judgment must be "supported by satisfactory evidence." Dkt. No. 14 (citing Fed. R. Civ. P. 55(d)).

In support of her motion, Plaintiff submitted: declarations from Plaintiff and her counsel; information regarding USCIS processing time for I-765 applications; her marriage license; notices of receipt for her Form I-485 and Form I-765; a copy of her current EAD; and paystubs from her current employer. As discussed below, the evidence supports her motion and the requested relief.

IV.

Even when the procedural requirements are satisfied, the decision whether to enter default judgment is discretionary. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Here, the *Eitel* factors support entry of a default judgment: (1) Plaintiff would be prejudiced absent a default judgment because she cannot otherwise obtain relief; (2) Plaintiff's claim appears to be meritorious; (3) the complaint adequately pleads an APA violation against USCIS; (4) Plaintiff does not seek monetary relief; (5) USCIS has made no attempt to defend this case, and the undisputed allegations are accepted as true; (6) there is no evidence to suggest that USCIS's default results from excusable neglect; and (7) USCIS's failure to appear or respond makes deciding the case on the merits impractical.

Only a few of the *Eitel* factors warrant further discussion.

The second and third *Eitel* factors together assess the merits of a plaintiff's substantive claims. To assess whether agency action has been unreasonably delayed warranting relief under the APA, the Ninth Circuit applies the standard articulated in *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984). *Vaz*, 33 F.4th at 1137. Under *TRAC*, courts consider six factors in evaluating the reasonableness of an agency's delay:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (cleaned up).

The first factor, which considers "whether the time for agency action has been reasonable," is the most important. *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020). In analyzing the reasonableness of delay, a court looks to the length of and reasons for the delay. *Vaz*, 33 F.4th at 1138 (considering

4

length of delay); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) (considering whether delay is "governed by an identifiable rationale").  Courts measure the length of delay from the last agency action.  *See, e.g.*, *Khan v. Blinken*, No. 2:23-CV-02814, 2024 WL 3446432, at *8 (E.D. Cal. July 17, 2024).

Here, the adjudication of Plaintiff's employment authorization application has been delayed for almost a year.  *See* Dkt. No. 15-10 (copy of Plaintiff's EAD, valid between May 28, 2025 and May 27, 2026).  According to USCIS's website, the average processing time for an EAD in 2025 was 2.8 months.  Dkt. No. 15-3 at 7.  The government, by virtue of its failure to appear, has not provided a reason for this delay.  Therefore, the first *TRAC* factor favors Plaintiff on this unopposed record.

As to the second factor, Congress declared its expectation in 8 U.S.C. § 1571(b) that "an immigration benefit application should be completed not later than 180 days after the initial filing of the application[.]" *Id.*  While not a "mandatory timeline," § 1571(b) reflects a "normative expectation . . . of a reasonable processing time for an immigrant benefit application[.]" *Behdin v. Edlow*, No. 26-CV-00566, 2026 WL 1031079, at *14 (N.D. Cal. Apr. 16, 2026).  This factor therefore also favors Plaintiff.

The third and fifth factors—whether "human health and welfare are at stake" and the "extent of the interests prejudiced by delay"—are neutral or weigh slightly in Plaintiff's favor.  *TRAC*, 750 F.2d at 80.  Plaintiff acknowledges that failure to timely adjudicate her EAD will not result in her basic needs not being met.  Dkt. No. 15-5 ¶ 9.  She asserts, however, that disruptions in her work authorization "could have career-long impacts." Dkt. No. 15-1 at 6; *see* Dkt. No. 15-5 ¶¶ 9–13 (describing negative impacts such as "sever[ing] relationships with clients and colleagues," "reduc[ing] [her] competitiveness in the job market," and "prevent[ing] her from contributing to [her] long-term financial goals").  While generalized financial concerns shared by most applicants typically do not constitute sufficient prejudice, *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021), the "inability to . . . work almost certainly has a negative effect on [Plaintiff's] welfare," particularly at this early stage in her career.  *Muvvala v. Wolf*, No. 1:20-CV-02423, 2020 WL 5748104, at *4 (D.D.C. Sept. 25, 2020).

The fourth factor—the effect of expediting delayed action—similarly favors Plaintiff.  Given the lengthy delay in this case and the likelihood that Plaintiff's EAD ordinarily would have been adjudicated by now, there is less concern that ordering the government to adjudicate her EAD would "simply move [Plaintiff] to

5

the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief." *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019). Further, adjudicating an EAD is relatively less burdensome than adjudicating other forms of immigration applications. *See* Dkt. No. 15-1 at 4 (noting that Congress reported in November 2019 that adjudicating an EAD takes 12 minutes).

Plaintiff does not address the sixth factor, which considers whether the agency has acted in bad faith. This factor does not materially affect the *TRAC* analysis here.

In sum, because the *TRAC* factors largely weigh in favor of finding that USCIS's delay in adjudicating Plaintiff's employment authorization application is unreasonable, her APA claim—as pleaded and supported by evidence and without any opposition by the government—is meritorious. *See Behdin*, 2026 WL 1031079, at *16. Accordingly, the second and third *Eitel* factors weigh in favor of default judgment.

V.

The motion for default judgment is granted. USCIS is ordered to adjudicate Plaintiff's pending employment authorization application by no later than May 27, 2026.

Date: May 1, 2026                                      _____
                                                                Stanley Blumenfeld, Jr.
                                                                United States District Judge

6